Mildred K. O'Linn, Esq. (State Bar No. 159055)
Tony M. Sain, Esq. (State Bar No. 251626)
Lynn L. Carpenter Esq. (State Bar No. 310011)
Jessica W. Rosen, Esq. (State Bar No. 294923)
**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
801 S. Figueroa St, 15th Floor
Los Angeles, California 90017-3012
Telephone: (213) 624-6900
Facsimile: (213) 624-6999
*mko@manningllp.com; tms@manningllp.com*
*llc@manningllp.com; jwr@manningllp.com*

Attorneys for Defendants, COUNTY OF SAN BERNARDINO, JONATHAN FLORES, SPENCER WILT, and KENT WATSON

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION**

AMBER WALLISA, individually and as successor-in-interest to Decedent STEPHEN SCHENCK,,

Plaintiff,

v.

CITY OF HESPARIA, a municipal corporation; COUNTY OF SAN BERNARDINO, a municipal corporation; TOWN OF APPLE VALLEY, a municipal corporation; JONATHAN FLORES, individually and his official capacity as a deputy Sheriff for the COUNTY OF SAN BERNARDINO Sheriff's Department; DOES 1-10, inclusive; individually and in their capacities as law enforcement agents and/or personnel for the COUNTY OF SAN BERNARDINO Sheriff's Department; DOES 11-20, inclusive; individually and in their capacities as law enforcement agents and/or personnel for the TOWN OF APPLE VALLEY Police Department; DOES 21-30, inclusive; individually and in their capacities as law enforcement agents and/or personnel for the CITY OF HESPARIA Police Department,

Defendants.

Case No. 5:16-cv-02638-FMO-KK
*[Hon. Fernando M. Olguin;*

***JOINT APPENDIX***

**STATEMENT OF UNCONTROVERTED FACTS**

*[Filed concurrently with Joint Brief Re: Defendants' Motion for Summary Judgment; Evidentiary Appendix; Declaration of Lynn L. Carpenter in support of Defendants' Motion for Summary Judgment; Daubert Motion [Proposed] Order]*

Judge: Hon. Fernando M. Olguin
Date: October 4, 2018
Time: 10:00 a.m.
Crtrm.: 6D

Trial Date: December 4, 2018

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| D1. | Shortly after 4:00 a.m. on January 25, 2016, the deputies of the San Bernardino County Sheriff's Department received a call from dispatch, advising law enforcement of a call in the City of Hesperia related to an "unknown problem" at a residence on 11th Avenue. | Ex. 1 [Audio of Radio Dispatch  on January 25, 2016, COSB 001948]; Ex. 2 [Call history log Log re: 8831 Eleventh Ave., dated January 25, 2016, COSB 000009-000017]; Ex. 3 [Flores Tr. at 74:13-76:24]. | Undisputed | |
| D2. | Dispatch advised  a "Be On The Lookout" warning for the City of Hesperia, rather than simply providing information, and the deputies believed the call to be serious. | Ex. 3 [Flores Tr. 75:24-76:5]; Ex. 4 [Watson Tr. 19:12-22]. | Undisputed | |
| D3. | Several deputies responded to the call | Ex. 3 [Flores Tr. 77:25-79:1]; Ex. 4 [Watson | Undisputed | |

Case No. 5:16-cv-02638-FMO-KK

**JOINT APPENDIX OF UNDISPUTED AND DISPUTED FACTS**

MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | as "Code 3" with lights and sirens, including Defendant Deputies Jonathan Flores, Spencer Wilt, and Kent Watson. | Tr. 19:12-22]. | | |
| D4. | As the deputies drove to the location, dispatch advised the deputies that the suspect had forced his way into a residence and assaulted a resident in the home with a bat, and that a robbery was occurring: a motorcycle was being stolen. | Ex. 1 [Audio of Radio Dispatch on January 25, 2016]; Ex. 3 [Flores Tr. at 76:8-12; 78:14-16; 79:6-1, 6-19]. Ex. 4 [Watson 41:1-8]. | Undisputed | |
| D5. | Providing updates, dispatch further advised the deputies that the subject returned after | Ex. 1 [Audio of Radio Dispatch on January 25, 2016]; Ex. 3 [Flores Tr. 79:6-14]; Ex. 4 [Watson Tr. | Undisputed | |

MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | stealing the motorcycle and was attempting to or had set a semi-truck on fire. | 41:1-8]. | | |
| D6. | The deputies were advised that the suspect was male, large in stature, and wearing all black. | Ex. 1 [Audio of Radio Dispatch on January 25, 2016]; Ex. 5 [Wilt Tr. 33:22-23]. | Disputed in part. Conflicting evidence presented. | Ex. 3 [Flores Tr. 74:14-75:3, 76:6-24, 79:2-22, 86:17-86:20.] |
| D7. | When Deputy Flores arrived at the 11th Avenue residence, Deputy Flores saw a female waving her arms frantically and yelling, "He's in the back, he's in the back." | Ex. 3 [Flores Tr. 91:1-3, 23-25]. | Undisputed | |
| D8. | Deputy Flores believes he may have also heard, "He's going to kill us." | Ex. 2 [Call history log Log re: 8831 Eleventh Ave., dated January 25, 2016]; Ex. 3 [Flores Tr. 91:3-6]. | Disputed, contradictory evidence presented. | Ex. 3 [Flores Tr. 90:10-91:6]. |
| D9. | Deputy Flores walked towards the | Ex. 3 [Flores Tr. 91:7-10]. | Undisputed. | |

MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | driveway and past the female to head to the back yard. | | | |
| D10. | As Deputy Flores walked on the driveway, he noticed a male victim with blood on him stumbling out of the front door of the residence. | Ex. 3 [Flores Tr. 91:12-20]. | Undisputed. | |
| D11. | Deputy Flores made his way to the backyard. Using his flashlight, he could see a subject wearing all black clothing and shoes with reflectors. | Ex. 3 [Flores Tr. 94:11-16]. | Undisputed. | |
| D12. | It was at that point that Deputy Flores saw the subject (who was later identified as Steven Schenk, the decedent) running eastbound | Ex. 3 [Flores Tr. 94:21-24]. | Undisputed. | |

MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | towards the back of the property, towards the fence. | | | |
| D13. | At this point, Deputy Flores believed the decedent to be the assailant. | Ex. 3 [Flores Tr. 94:25-95:1]. | Undisputed. | |
| D14. | To maintain a visual on the decedent, who was an estimated 150 feet away from Deputy Flores, he began to run. | Ex. 3 [Flores 96:14-97:20]. | Undisputed. | |
| D15. | The decedent hopped over a fence onto the easement behind the 11th Avenue residence that goes behind the houses. | Ex. 3 [Flores 96:14-97:20]. | Undisputed. | |
| D16. | Deputy Flores was concerned because the decedent was fleeing in a residential area, and he believed the decedent to be | Ex. 3 [Flores 97:21-98:3]. | Disputed. Conflicting evidence presented. | Ex. 3 [Flores Tr. 97:21-98:15]. |

MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | armed. | | | |
| D17. | Deputy Flores then observed the decedent running northbound through the easement and then hop over a back fence into another a backyard. | Ex. 3 [Flores Tr. 98:19-100:7]. | Undisputed. | |
| D18. | Deputy Flores or his partner radioed decedent's location in that backyard, and Deputy Flores waited for backup so as to avoid the potential that the decedent was lying in wait to assault him if he hopped the fence with no back up. | Ex. 3 [Flores Tr. 101:6-22.] | Undisputed. | |
| D19. | Deputy Flores therefore started a perimeter so that the decedent could not continue to flee and | Ex. 3 [Flores Tr. 102:10-16]. | Undisputed. | |

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | waited until additional deputies arrived. | | | |
| D20. | Deputy Flores waited approximately five to ten minutes for additional deputies to arrive. | Ex. 3 [Flores Tr. 105:25-106:3]. | Undisputed. | |
| D21. | Deputy Wilt approached Deputy Flores and they both determined to hop over the fence and give search for the decedent. | Ex. 3 [Flores Tr. 107:9-15]; Ex. 5 [Wilt Tr. 31:18-32:8]. | Undisputed. | |
| D22. | The backyard contained much debris and was crowded with many vehicles, including a yellow school bus. | Ex. 3 [Flores Tr. 108:8-10]; Ex. 5 [Wilt Tr. 58:3-5]. | Undisputed. | |
| D23. | Deputy Flores found the decedent hiding under the bus. | Ex. 3 [Flores Tr. 109:19-22]; Ex. 5 [Wilt 34:15-20]. | Undisputed. | |
| D24. | The bus was located under a metal | Ex. 3 [Flores Tr. 109:6-11]; Ex. 4 [Watson Tr. | Disputed, in part. The fact is | |

MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | awning (or a carport) along with lots of other property, including tires, and Deputy Flores believes there were tools on the ground. | 28:4-15]. | compound. | |
| D25. | Deputy Flores believed there were tools on the ground. | Ex. 3 [Flores 109:6-11]. | Undisputed. | |
| D26. | The metal awning blocked all the light that was in the backyard, making the lighting conditions very dark in the area around the bus. | Ex. 3 [Flores Tr. 114:23-115:3]. | Disputed, conflicting evidence presented. | Ex. 3 [Flores Tr. 99:3-24, 110:20-112:5]. |
| D27. | When Deputy Flores observed the decedent under the bus, the decedent was wearing a hooded sweatshirt with the hood pulled over his face and he | Ex. 3 [Flores Tr. 110:22-111:4]. | Undisputed. | |

Manning & Kass Ellrod, Ramirez, Trester LLP Attorneys at Law

MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | was facing down. (Flores 110:22-111:4.) | | | |
| D28. | Deputy Flores used his flashlight to shine light underneath the bus and the decedent responded by pulling both arms towards his waistband. | Ex. 3 [Flores Tr. 111:7-10]. | Undisputed | |
| D29. | Deputy Wilt began commanding the decedent to show his hands, but the decedent did not comply. | Ex. 5 [Wilt Tr. 35:14-36:6]; Ex. 6 [Audio of Radio Belt Recording from Deputy Spencer Wilt dated January 25, 2016, COSB 001949]. | Disputed, conflicting evidence presented. | Ex. 6 [Audio of Radio Belt Recording from Spencer Wilt, dated January 25, 2016]; Ex. 3 [Flores Tr. 115:22-117:11, 114:4-14, 117:12-118:16]; Ex. 5 [Wilt Tr. 35:14-36:6, 36:8-13]. |
| D30. | With the decedent actively refusing to comply with commands and reaching towards his | Ex. 3 [Flores Tr. 111:11-19]; Ex. 5 [Wilt Tr. 26:18-20]; Ex. 6 [Audio of Radio Belt Recording from | Disputed, conflicting evidence presented, and the fact is compound. | Ex. 3 [Flores Tr. 115:22-117:11, 114:4-14, 117:12-118:16]; Ex. 5 [Wilt Tr. 35:14- |

MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | waistband, the deputies were concerned that the decedent could be reaching for a weapon since subjects commonly carry weapons in their waistband. | Deputy Spencer Wilt dated January 25, 2016, COSB 001949]. | | 36:6, 36:8-13] Ex. 17 [Clark Tr. 87:18-88:6]. |
| D31. | Deputy Flores therefore drew his TASER out because he could not see the decedent's hands and warned the decedent at least two to five times he would be tasered if he did not comply. | Ex. 3 [Flores Tr. 115:17-116:12.]; Ex. 6 [Audio of Radio Belt Recording from Deputy Spencer Wilt dated January 25, 2016, COSB 001949]. | Disputed, in part, contradictory evidence presented. | Ex. 6 [Audio of Radio Belt Recording from Deputy Spencer dated January 25, 2016]. |
| D32. | At this point, Deputy Wilt was in front of the bus and Deputy Flores was to the left side of the bus. | Ex. 3 [Flores Tr. 115:17-21]; Ex. 5 [Wilt Tr. 41:11-14]. | Undisputed. | |
| D33. | At some point approximately 30 to | Ex. 3 [Flores Tr. 116:16-118:2]; Ex. 5 | Disputed, in part. Contradictory | Ex. 18 [Flores Tr. of statement to |

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | 45 seconds later, the decedent pulled his hands from underneath his body and did show his hands, and stated he was coming out, moving a few feet towards Deputy Flores' general direction, but then stopped and pulled his arms back towards his waistband in a fast manner. | [Wilt Tr. 36:4-6]. | evidence presented and the fact is compound. | Homicide Detail BATES No. 137:10-138:3]; Ex. 19 [Wilt Tr. of statement to Homicide Detail BATES No. 177:1-28, 195:7-17, 197:19-198:8]. |
| D34. | The deputies continued to give the decedent commands to come out. | Ex. 3 [Flores Tr. 119:3-7]; Ex. 6 [Audio of Radio Belt Recording from Deputy Spencer Wilt dated January 25, 2016, COSB 001949]. | Undisputed. | |
| D35. | Deputy Wilt walked around the back of the bus to assist Deputy Flores. | Ex. 3 [Flores Tr. 119:3-7]; Ex. 5 [Wilt Tr. 48:11-23]. | Undisputed. | |

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | (Flores 119:3-7; Wilt 48:11-23.) | | | |
| D36. | The deputies then grabbed the decedent to pull him completely out from under the bus, and the decedent continued to resist, flailing his arms and legs and moving around a lot. | Ex. 3 [Flores Tr. 122:1-128:13]; Ex. 5 [Wilt Tr. 51:19-24]; Ex. 6 [Audio of Radio Belt Recording from Deputy Spencer Wilt dated January 25, 2016, COSB 001949]. | Disputed, conflicting evidence presented. | Ex. 18 [Flores Tr. of statement to Homicide Detail BATES No. 137:10-138:3]. |
| D37. | It took approximately 15 to 45 seconds to pull the decedent out from under the bus after locating the decedent. | Ex. 3 [Flores Tr. 177:23-178:2]. | Disputed, conflicting evidence presented. | Ex. 3 [Flores Tr. 177:23-178:20]. |
| D38. | Once decedent was removed from underneath the bus, a struggle between decedent and the deputies occurred, which lasted | Ex. 5 [Wilt Tr. 93:19-94:1]; Ex. 6 [Audio of Radio Belt Recording from Deputy Spencer Wilt dated January 25, 2016, COSB 001949]. | Disputed, conflicting evidence presented. | Ex. 5 [Audio of Radio Belt Recording from Deputy Spencer dated January 25, 2016]; Ex. 4 [Watson Tr. 25:16- |

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | approximately one minute to a minute and a half. | | | 26:3, 26:17-27:5, 27:6-27:14]; Ex. 20 [Audio of Kent Watson Statement to Homicide Detail, dated January 25, 2016]. |
| D39. | The decedent continued to actively resist the deputies attempt to place him in custody, flailing and swinging his arms (still toward his waistband) and kicking his legs near Deputy Flores. | Ex. 3 [Flores Tr. 180:17-18]; Ex. 5 [Wilt Tr. 55:16-22]; Ex. 6 [Audio of Radio Belt Recording from Deputy Spencer Wilt dated January 25, 2016, COSB 001949]. | Disputed. Conflicting evidence presented. | Ex. 5 [Wilt Tr. 58:24-59:17, 61:7-62:2, 63:20-64:12, 64:13-65:16]; Ex. 18 [Flores Tr. of statement to Homicide Detail BATES No. 137:10-138:3] |
| D40. | Deputy Flores was near the decedent's legs and Deputy Wilt was near the decedent's head. | Ex. 3 [Flores Tr. 130:14-16]. | Disputed in part. The fact is compound. | |
| D41. | Deputy Flores placed his legs over the decedent's feet to prevent decedent | Ex. 3 [Flores Tr. 130:24-25]. | Undisputed. | |

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | from kicking him. | | | |
| D42. | Deputy Flores repeatedly gave verbal commands and attempted to grab the decedent's left arm to pull decedent's arms from his waistband. | Ex. 3 [Flores Tr. 132:10-133:14]; Ex. 6 [Audio of Radio Belt Recording from Deputy Spencer Wilt dated January 25, 2016, COSB 001949]. | Disputed. Conflicting evidence presented. | Ex. 5 [Wilt Tr. 61:7-62:2]. |
| D43. | While continuing to try and pull the decedent's arm with his left hand, Deputy Flores pulled his TASER out and, with his right hand, turned the TASER on, placed it on the decedent's lower back, and initiated a drive stun. | Ex. 3 [Flores Tr. 134:1-16]; Ex. 6 [Audio of Radio Belt Recording from Deputy Spencer Wilt dated January 25, 2016, COSB 001949]. | Undisputed. | |
| D44. | The deputies continued to give commands of "show me your hands" and "put your hands | Ex. 3 [Flores Tr. 138:5-19]; Ex. 6 [Audio of Radio Belt Recording from Deputy Spencer Wilt dated January 25, | Disputed. Conflicting evidence presented. | Ex. 5 [Wilt Tr. 61:7-62:2, 63:20-64:12]; Ex. 17 [Clark Tr. 88:8-89:4]. |

MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | behind your back," but the decedent continued to pull his arm near his waistband. | 2016, COSB 001949]. | | |
| D45. | Deputy Flores' use of the drive stun was done in hope that he would be able to pull the decedent's arm from his waistband so that the decedent could not retrieve a weapon and hurt Deputy Flores or Deputy Wilt. | Ex. 3 [Flores 145:6-7; 150:15-20]. | Disputed. Conflicting evidence presented. | Ex. 3 [Flores 143:4-15]; Ex. 17 [Clark Tr. 102:6-102:17, 103:17-103:24]. |
| D46. | Unable to get the decedent's arm behind his back due to the active resistance, Deputy Flores initiated two more drive stun after various attempts to pull the decedent's arm from his | Ex. 3 [Flores Tr. 140:18-25; 146:15-20]. | Disputed. Conflicting evidence presented. | Ex. 5 [Wilt Tr. 55:20-56:9, 56:14-57:15, 57:17-57:19, 61:7-62:2, 63:20-64:12, 64:13-65:16, 68:20-69:1, 70:8-14]; Ex. 17 [Clark Tr. 88:8-89:4]. |

MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | waistband. | | | |
| D47. | During the three drive-stuns, the decedent was positioned about on his side. | Ex. 3 [Flores Tr. 154:24-155:1]. | | Ex. 5 [Wilt Tr. 50:11-51:7, 52:14-53:3]; Ex. 19 [Wilt Tr. of statement to Homicide Detail BATES No. 207:6-27]; Ex. 18 [Flores Tr. of statement to Homicide Detail BATES No. 146:7-17]; Ex. 4 [Watson Tr. 21:1-12]. |
| D48. | After the third drive stun, the decedent grabbed Deputy Flores' leg and he began to fall backwards. | Ex. 3 [Flores Tr. 147:12-14-148:22]. | Undisputed. | |
| D49. | As Deputy Flores was falling backwards, he hit the decedent with the front part of his TASER on the left side of decedent's | Ex. 3 [Flores 148:15-22]. | Undisputed. | |

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | face. | | | |
| D50. | He did so, as he believed decedent intended to get Deputy Flores to the ground on his back so decedent could get on top of Deputy Flores. | Ex. 3 [Flores 149:23-150:9]. | Disputed, conflicting evidence presented. | Ex. 3 [Flores 149:19-150:9]. |
| D51. | During the struggle and decedent's active resistance, Deputy Wilt commanded the decedent to place his hands behind his back, which the decedent refused to do and instead, decedent continued to actively resist, including flailing and swinging his arms, and moving his legs around. | Ex. 5 [Wilt Tr. 56:3-6; 57:24-58:7; 70:23-71:9]; Ex. 6 [Audio of Radio Belt Recording from Deputy Spencer Wilt dated January 25, 2016, COSB 001949]. | Disputed, conflicting evidence presented. | Ex. 5 [Wilt Tr. 55:20-56:9, 56:14-57:15, 57:17-57:19, 61:7-62:2, 63:20-64:12, 64:13-65:16, 68:20-69:1, 70:8-14]; Ex. 17 [Clark Tr. 88:8-89:4]. |
| D52. | Deputy Wilt perceived decedents | Ex. 5 [Wilt Tr. 57:24-58:7; 60:5-9]; see also | Disputed, conflicting | Ex. 5 [Wilt Tr. 55:20-56:9, 56:14- |

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | active resistance as "at the time was that Mr. Schenck was a threat" because "[h]e was not compliant to from my grip," "[h]e was moving his hands around, pointing his hands to his waistband, and given the amount of debris in proximity to various weapons, it's a possibility he had weapons in his waistband.· I felt Mr. Schenck was threatening and attacking myself and Mr. Flores." | Ex. 3 [Flores Tr. 150:15-20]; Ex. 6 [Audio of Radio Belt Recording from Deputy Spencer Wilt dated January 25, 2016, COSB 001949]. | evidence presented. | 57:15, 57:17-57:19, 58:24-59:17, 61:7-62:2, 63:20-64:12, 64:13-65:16, 68:20-69:1, 70:8-14]; Ex. 17 [Clark Tr. 88:8-89:4]; Ex. 18 [Flores Tr. of statement to Homicide Detail BATES No. 146:7-17]. |
| D53. | The decedent's refusal to comply with the commands and active resistance prompted Deputy Wilt to administer | Ex. 5 [Wilt Tr. 56:3-22]; see also Ex. 3 [Flores 160:11-15]; Ex. 6 [Audio of Radio Belt Recording from Deputy Spencer Wilt | Disputed, contradicting evidence presented. | Ex. 5 [Wilt Tr. 55:20-56:9, 56:14-57:15, 57:17-57:19, 58:24-59:17, 61:7-62:2, 63:20-64:12, 64:13-65:16, |

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | approximately three or four punches to the decedent's back. | dated January 25, 2016, COSB 001949]. | | 68:20-69:1, 70:8-14]; Ex. 17 [Clark Tr. 88:8-89:4]; Ex. 18 [Flores Tr. of statement to Homicide Detail BATES No. 146:7-17]. |
| D54. | The decedent continued to actively resist both Deputy Wilt and Deputy Flores, pulling away from their grips and continuing to kick his legs. | Ex. 5 [Wilt 9:9-13; 57:9-15]; Ex. 6 [Audio of Radio Belt Recording from Deputy Spencer Wilt dated January 25, 2016, COSB 001949]. | Disputed, contradicting evidence presented. | Ex. 5 [Wilt Tr. 55:20-56:9, 56:14-57:15, 57:17-57:19, 58:24-59:17, 61:7-62:2, 63:20-64:12, 64:13-65:16, 68:20-69:1, 70:8-14]; Ex. 17 [Clark Tr. 88:8-89:4]; Ex. 18 [Flores Tr. of statement to Homicide Detail BATES No. 146:7-17]. |
| D55. | In a further effort to quell decedent's resistance and restrain decedent so | Ex. 5 [Wilt Tr. 57:13-58:7; 63:13-18]; Ex. 6 [Audio of Radio Belt Recording from | Disputed, contradicting evidence presented. | Ex. 5 [Wilt Tr. 55:20-56:9, 56:14-57:15, 57:17-57:19, 58:24-59:17, 61:7- |

MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | as not to reach for any potential weapons, Deputy Wilt proceeded to manually strike the decedent in the face, an estimated 15 punches. | Deputy Spencer Wilt dated January 25, 2016, COSB 001949]. | | 62:2, 63:20-64:12, 64:13-65:16, 68:20-69:1, 70:8-14]; Ex. 17 [Clark Tr. 88:8-89:4]; Ex. 18 [Flores Tr. of statement to Homicide Detail BATES No. 146:7-17]. |
| D56. | Near the end of the altercation, the decedent said, "Okay, okay." | Ex. 5 [Wilt Tr. 70:12-14]; Ex. 6 [Audio of Radio Belt Recording from Deputy Spencer Wilt dated January 25, 2016, COSB 001949]. | Undisputed. | |
| D57. | The deputies were able to gain control and overcome decedent's resistance, and at this point decedent was placed in a prone position so the deputies could handcuff him. | Ex. 3 [Flores Tr. 162:24-163:1]; Ex. 4 [Watson Tr. 21:21-22:11; 42:15-18; 43:8-12]. | Disputed, contradicting evidence presented. | Ex. 5 [Wilt Tr. 50:11-51:7, 52:14-53:3]; Ex. 19 [Wilt Tr. of statement to Homicide Detail BATES No. 207:6-16]; Ex. 18 [Flores Tr. of statement to Homicide Detail BATES No. 146:7- |

MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | | | | 17]; Ex. 4 [Watson Tr. 21:1-12]. |
| D58. | Deputy Wilt had one knee across decedent's shoulder, closer to the center of the back, with the lower leg across the decedent's right shoulder almost in a diagonal for approximately two to five seconds. | Ex. 3 [Flores Tr. 162:24-163:1]; Ex. 4 [Watson Tr. 21:21-22:11, 42:15-18, 43:8-12]. | Disputed, contradicting evidence presented. | Ex. 5 [Wilt Tr. 50:11-51:7, 52:14-53:3]; Ex. 19 [Wilt Tr. of statement to Homicide Detail BATES No. 207:6-16]; Ex. 18 [Flores Tr. of statement to Homicide Detail BATES No. 146:7-17]; Ex. 4 [Watson Tr. 21:1-12]. |
| D59. | The deputies are trained to place one knee across the shoulder to control a suspect from rolling or moving, and also learn that it takes a significant amount of weight, more than that of one person and up to three people, to restrict or | Ex. 5 [Wilt Tr. 73:1-7]. | Disputed, contradicting evidence presented. | Ex. 21 [Spitz Tr. 98:21-99:9, 99:10-100:11, 101:5-102:2]. |

MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | inhibit someone's breathing in prone position. | | | |
| D60. | Aside from decedent being on his stomach for maybe one to seconds before the first handcuff, decedent was on his stomach in a prone position for no more than the five to fifteen seconds to get the second handcuff on, though decedent continued to try and move his body around, so his body was not completely flat and on his stomach during this period. | Ex. 3 [Flores 183:21-184:22]. | Disputed, contradicting evidence presented. | Ex. 5 [Wilt Tr. 50:11-51:7, 52:14-53:3]; Ex. 19 [Wilt Tr. of statement to Homicide Detail BATES No. 207:6-16]; Ex. 18 [Flores Tr. of statement to Homicide Detail BATES No. 146:7-17]; Ex. 4 [Watson Tr. 21:1-12]. |
| D61. | At no other point prior to handcuffing nor at any time after the handcuffing was | Ex. 3 [Flores Tr. 158:20-23; 163:8-10; 183:21-184:5; 189:2-190:9]. | Disputed, contradicting evidence presented. | Ex. 5 [Wilt Tr. 50:11-51:7, 52:14-53:3]; Ex. 19 [Wilt Tr. of statement to |

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | decedent on his stomach at during his altercation with the deputies. | | | Homicide Detail BATES No. 207:6-16]; Ex. 18 [Flores Tr. of statement to Homicide Detail BATES No. 146:7-17]; Ex. 4 [Watson Tr. 21:1-12]. |
| D62. | At some point after hand cuffing the first wrist, and perhaps after handcuffing the second wrist, decedent stated that he could not breathe. | Ex. 3 [Flores 166:23-25, 185:4-7]; Ex. 5 [Wilt 72:19-21; 100:14-18]; Ex. 6 [Audio of Radio Belt Recording from Deputy Spencer Wilt dated January 25, 2016, COSB 001949]. | Disputed, contradicting evidence presented. | Ex. 18 [Flores Tr. of statement to Homicide Detail BATES No. 146:7-17]. |
| D63. | Immediately after decedent was handcuffed, he was placed on his side or in a sitting position, then approximately 5 to 10 seconds later, stood up to his feet. | Ex. 3 [Flores Tr. 186:13-16]; Ex. 4 [Watson Tr. 22:15-17]; Ex. 5 [Wilt Tr. 100:19-101:2]. | Disputed, contradicting evidence presented. | Ex. 4 [Watson Tr. 22:13-23:12]. |
| D64. | In all, decedent was | Ex. 3 [Flores Tr. | Disputed, | Ex. 5 [Wilt Tr. |

MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | in a prone position no more than 17 seconds and placed in standing position approximately 20 to 30 seconds after being handcuffed. | 158:20-23; 163:8-10; 183:21-184:5; 186:13-16; 189:2-190:9]; Ex. 4 [Watson Tr. 22:15-17]; Ex. 5 [Wilt Tr. 73:1-7; 77:15-22; 100:19-101:2]. | contradicting evidence presented. | 50:11-51:7, 52:14-53:3, 78:13-79:2]; Ex. 19 [Wilt Tr. of statement to Homicide Detail BATES No. 207:6-16]; Ex. 18 [Flores Tr. of statement to Homicide Detail BATES No. 146:7-17]; Ex. 4 [Watson Tr. 21:1-12]. |
| D65. | Deputy Watson arrived to the scene to assist in escorting the decedent and observed the second handcuff getting placed onto the decedent. | Ex. 4 [Watson Tr. 20:22-24]. | Undisputed. | |
| D66. | Deputy Watson heard no complaints from the decedent about his breathing, nor did Deputy Watson observe | Ex. 4 [Watson Tr. 39:2-12; 50:7-10]. | Undisputed. | |

MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | Deputy Flores or Deputy Wilt punch or use the TASER on decedent. | | | |
| D67. | At this point, decedent appeared to be aware of what happened and his surroundings, could hear what the deputies were asking him, and able to stand under his own weight. | Ex. 4 [Watson 25:5-7]; Ex. 5 [Wilt Tr. 78:1-5]. | Disputed | Ex. 19 [Wilt Tr. of statement to Homicide Detail BATES No. 178:20-27]. |
| D68. | After the deputies brought the decedent to a standing position, he continued to actively resist and try and break away from the control of Deputy Watson and Deputy Wilt. | Ex. 4 [Watson Tr. 48:2-10]; Ex. 6 [Audio of Radio Belt Recording from Deputy Spencer Wilt dated January 25, 2016, COSB 001949]. | Disputed, contradicting evidence presented. | Ex. 19 [Wilt Tr. of statement to Homicide Detail BATES No. 178:20-27]; Ex. 4 [Watson Tr. 25:22-26:3, 26:17-27:14, 28:4-6]; Ex. 18 [Flores Tr. of statement to Homicide Detail BATES No. |

MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | | | | 160:15-161:25, 162:6-27]. |
| D69. | Approximately one to two seconds after standing the decedent up, Deputy Watson had pushed the decedent into the bus to control the decedent's movement and gain a position of escort. | Ex. 4 [Watson Tr. 44:23-25, 48:11-15]. | Disputed, contradicting evidence presented. | Ex. 19 [Wilt Tr. of statement to Homicide Detail BATES No. 178:20-27]; Ex. 4 [Watson Tr. 25:8-14, 25:22-26:3, 26:17-27:14, 28:4-6]; Ex. 18 [Flores Tr. of statement to Homicide Detail BATES No. 160:15-161:25, 162:6-27]. |
| D70. | Approximately two to three seconds, Deputy Watson's duty belt got caught on an unknown object inside the carport, and he gently pushed the decedent up against a post to maintain | Ex. 4 [Watson Tr. 28:4-15]. | Disputed, contradicting evidence presented. | Ex. 19 [Wilt Tr. of statement to Homicide Detail BATES No. 178:20-27]; Ex. 4 [Watson Tr. 25:8-14, 25:22-26:3, 26:17-27:14, 28:4-6]; Ex. 18 [Flores Tr. of statement to |

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | control of him as he untangled his duty belt from the object. | | | Homicide Detail BATES No. 160:15-161:25, 162:6-27]. |
| D71. | During the approximate minute and a half it took to escort the decedent to the front of the house, the decedent stumbled three times. Prior to the first stumble, the Decedent had been walking on his own. | Ex. 4 [Watson Tr. 31:11-15]. | Disputed, contradictory evidence presented. | Ex. 19 [Wilt Tr. of statement to Homicide Detail BATES No. 178:20-27; 179:2-16]; Ex. 4 [Watson Tr. 25:8-14, 25:22-26:3, 26:17-27:14, 28:4-6]; Ex. 18 [Flores Tr. of statement to Homicide Detail BATES No. 160:15-161:25, 162:6-27]. |
| D72. | Decedent's first stumble was approximately 25 to 45 seconds after the decedent stood up; the second stumble was approximately | Ex. 3 [Flores Tr. 188:4-16]; Ex. 4 [Watson Tr. 45:7-22]. | Disputed, contradictory evidence presented. | Ex. 19 [Wilt Tr. of statement to Homicide Detail BATES No. 178:20-27; 179:2-16]; Ex. 4 [Watson Tr. 25:8-14, 25:22- |

Manning & Kass Ellrod, Ramirez, Trester LLP Attorneys at Law

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | 15 to 25 seconds after the first; and the third stumble occurred approximately 10 to 15 seconds after the second. | | | 26:3, 26:17-27:14, 28:4-6]; Ex. 18 [Flores Tr. of statement to Homicide Detail BATES No. 160:15-161:25, 162:6-27]. |
| D73. | The decedent's first two stumbles appeared to the deputies to be further resistance—that he was purposely going deadweight to stop the deputies from moving him, because the decedent was still able to stand and walk on his own. | Ex. 3 [Flores Tr. 168:7-12; 175:15-176:18]; Ex. 5 [Wilt Tr. 79:23-80:2]. | Disputed, contradicting evidence presented. | Ex. 19 [Wilt Tr. of statement to Homicide Detail BATES No. 178:20-27; 179:2-16]; Ex. 4 [Watson Tr. 25:8-14, 25:22-26:3, 26:17-27:14, 28:4-6]; Ex. 18 [Flores Tr. of statement to Homicide Detail BATES No. 160:15-161:25, 162:6-27]. |
| D74. | When the decedent stumbled for the third time, the | Ex. 3 [Flores Tr. 173:21-23]; Ex. 4 [Watson Tr. 36:8- | Disputed, contradictory evidence presented. | Ex. 4 [Watson Tr. 35:16-36:17, 36:18-21, 37:3-18]. |

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | deputies assisted him to the ground slowly and Deputy Watson, beginning to fall with decedent in his arm, used his foot to gently place decedent's head to the ground so as to no let decedent fall | 37:8]. | | |
| D75. | During the escort to the front, the deputies noticed an aggressive dog, a Doberman Pinscher behind them barking. | Ex. 3 [Flores Tr. 189:7-15]; Ex. 4 [Watson Tr. 38:11-17]; Ex. 5 [Wilt Tr. 84: 20-24; 86:15-17]; Ex. 6 [Audio of Radio Belt Recording from Deputy Spencer Wilt dated January 25, 2016, COSB 001949]. | Undisputed. | |
| D76. | By the third stumble, they determined they needed to get themselves and the decedent out safely from the backyard. | Ex. 4 [Watson 38:11-17]. | Disputed, contradicting evidence presented. | Ex. 5 [Wilt Tr. 88:12-89:10]; Ex. 18 [Flores Tr. of statement to Homicide Detail BATES No. 161:12-25]. |

MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

Manning & Kass
Ellrod, Ramirez, Trester LLP
Attorneys at Law

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| D77. | After the decedent's third stumble, and having been near the gate that leads to the front yard, the deputies either assisted the decedent to the front yard or carried him out to avoid contact with the approaching dog. | Ex. 4 [Watson Tr. 38:11-17]; Ex. 5 [Wilt Tr. 88:16-24]. | Disputed, contradictory evidence presented. | Ex. 5 [Wilt Tr. 88:12-89:10]; Ex. 18 [Flores Tr. of statement to Homicide Detail BATES No. 161:12-25]. |
| D78. | The deputies (Wilt, Flores, and Watson,) who attempted to arrest decedent, used reasonable force to prevent his escape, in self-defense, to overcome the active resistance, and effect the arrest of decedent for the above stated violations. | Ex. 13 [Fonzi Report at p. 8]. | Disputed, contradictory evidence presented. | Ex. 17 [Clark Tr. 41:16-42:9, 42:12-24, 42:25-43:15, 43:16-44:14, 44:15-23]; Ex. 18 [Flores Tr. of statement to Homicide Detail BATES No. 150:12-151:12]. |
| D79. | A police officer acting consistently with standard police | Ex. 13 [Fonzi Report at p. 10]. | Disputed, contradictory evidence presented. | Ex. 17 [Clark Tr. 41:16-42:9, 42:12-24, 42:25-43:15, |

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | practices and training would conclude that the deputies (Wilt, Flores and Watson) followed appropriate state law, department policies, and training as it relates to reasonable suspicion, probable cause, arrest, and the use of non-deadly force. | | | 43:16-44:14, 44:15-23]. |
| D80. | Once the deputies and decedent went through the gate to the front yard, the deputies could see blood on the decedent's face now that it was lit. | Ex. 4 [Watson Tr. 50:11-23]; Ex. 5 [Wilt Tr. 106:3-6]; | Undisputed. | |
| D81. | Approximately 10 to 20 seconds later, Deputy Wilt called for medical assistance. | Ex. 5 [Wilt Tr. 106:3-6]; Ex. 6 [Audio of Radio Belt Recording from Deputy Spencer Wilt dated January 25, 2016, 001949]; see also | Undisputed. | |

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | | Ex. 2 [Call history log Log re: 8831 Eleventh Ave., dated January 25, 2016, COSB 000009-000017]. | | |
| D82. | When Deputy Wilt called for medical assistance, the decedent had been placed in a seated position. | Ex. 5 [Wilt Tr. 88:23-89:3]. | Undisputed. | |
| D83. | Medical assistance arrived shortly thereafter, having come from the victim's home approximately two house away. | Ex. 7 [Paramedic Statement: Mestas, Ben, dated February 8, 2016, COSB 000077-000078]; Ex. 8 [Paramedic Statement: Cummings, Craig, dated February 8, 2016, COSB 000079]. | Undisputed. | |
| D84. | The decedent was found unresponsive, and the paramedics began life saving measures. | Ex. 7 [Paramedic Statement: Mestas, Ben, dated February 8, 2016, 000077-000078]; Ex. 8 [Paramedic Statement: Cummings, | Undisputed. | |

MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | | Craig, dated February 8, 2016, COSB 000079]. | | |
| D85. | The decedent later died after being transferred to the hospital. | Ex. 7 [Paramedic Statement: Mestas, Ben, dated February 8, 2016, COSB 000077-000078]; Ex. 8 [Paramedic Statement: Cummings, Craig, dated February 8, 2016, COSB 000079]. | Disputed, contradictory evidence presented. | Ex. 7 [Paramedic Statement: Mestas, Ben, dated February 8, 2016]; Ex. 8 [Paramedic Statement: Cummings, Craig, dated February 8, 2016]; Ex. 21 [Spitz Tr. 56:5-20]. |
| D86. | Scott McCormick, M.D. performed the autopsy of decedent on January 27, 2016. | Ex. 9 [McCormick Tr. 22:1-2; 23:2-3]. | Undisputed. | |
| D87. | McCormick had the neuropathology findings from Cho Lwin, M.D. prior to completing the autopsy protocol. | Ex. 9 [McCormick Tr. 27:12-15]. | Undisputed. | |
| D88. | Decedent's brain was sent to neuropathology for a | Ex. 9 [McCormick Tr. 30:2-6]. | Undisputed. | |

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | consult because of the external injuries to decedent's head, it was important to rule out brain injuries as a cause of death. | | | |
| D89. | Decedent had diffuse hemorrhage in his left eye, which was consistent with a punch as opposed to asphyxiation. | Ex. 9 [McCormick Tr. 52:2-13; 52:19-22]. | Undisputed. | |
| D90. | Decedent's primary cause of death was acute methamphetamine intoxication. | Ex. 9 [McCormick Tr. 58:21-59:3]. | Disputed, contradictory evidence presented. | Ex. 16 [Spitz Tr. 49:1-50:14, 50:15-50:20, 77:8-18, 104:12-105:2, 111:2-18]; Ex. 9 [McCormick Tr. 57:16-58:4, 58:6-59:3, 66:2-19, 67:6-20, 68:11-15, 68:16-69:2, 75:16-23, 79:12-24, 81:8-20, 81:21-83:6, 84:19-23, 85:24-86:6, 86:12-24, |

MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | | | | 90:14-91:2, 91:8-92:11, 92:25-93:24, 93:25-94:20, 137:24-138:6]. |
| D91. | The blunt impact injuries did not cause decedent's death. | Ex. 9 [McCormick Tr. 66:15-19]. | Disputed, contradictory evidence presented. | Ex. 21 [Spitz Tr. 49:1-50:14, 50:15-50:20, 77:8-18, 104:12-105:2, 111:2-18]; Ex. 9 [McCormick Tr. 57:16-58:4, 58:6-59:3, 66:2-19, 67:6-20, 68:11-15, 68:16-69:2, 75:16-23, 79:12-24, 81:8-20, 81:21-83:6, 84:19-23, 85:24-86:6, 86:12-24, 90:14-91:2, 91:8-92:11, 92:25-93:24, 93:25-94:20, 137:24-138:6]. |
| D92. | The injuries themselves were not significant enough to be directly related to | Ex. 9 [McCormick Tr. 67:14-20, 68:23-69:2]. | Disputed, contradictory evidence presented. | Ex. 21 [Spitz Tr. 49:1-50:14, 50:15-50:20, 77:8-18, 104:12-105:2, |

MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | the cause of death but the pain associated with those injuries and the physical exertion that those injuries represent were contributory. | | | 111:2-18]; Ex. 9 [McCormick Tr. 57:16-58:4, 58:6-59:3, 66:2-19, 67:6-20, 68:11-15, 68:16-69:2, 75:16-23, 79:12-24, 81:8-20, 81:21-83:6, 84:19-23, 85:24-86:6, 86:12-24, 90:14-91:2, 91:8-92:11, 92:25-93:24, 93:25-94:20, 137:24-138:6]. |
| D93. | All of the injuries were not directly causal of decedent's death. | Ex. 9 [McCormick Tr. 69:11-20]. | Disputed, contradictory evidence presented. | Ex. 21 [Spitz Tr. 49:1-50:14, 50:15-50:20, 77:8-18, 104:12-105:2, 111:2-18]; Ex. 9 [McCormick Tr. 57:16-58:4, 58:6-59:3, 66:2-19, 67:6-20, 68:11-15, 68:16-69:2, 75:16-23, 79:12-24, 81:8-20, 81:21-83:6, |

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | | | | 84:19-23, 85:24-86:6, 86:12-24, 90:14-91:2, 91:8-92:11, 92:25-93:24, 93:25-94:20, 137:24-138:6]. |
| D94. | Interior observations of decedent's were that his heart was large which is usually indicative of hypertensive cardiovascular disease or high blood pressure. | Ex. 9 [McCormick Tr. 77:16-22]. | Undisputed. | |
| D95. | There were no fractures to decedent other than fractures to the ribs which appeared caused by CPR or resuscitative efforts. | Ex. 9 [McCormick Tr. 80:7-12]; Ex. 11 [Clark Report at p. 10]. | Disputed, contradictory evidence presented. | Ex. 21 [Spitz Tr. 77:8-18]. |
| D96. | There were no fractures to decedent's skull, head or face. | Ex. 9 [McCormick Tr. 80:13-16]. | Disputed, contradictory evidence presented. | Ex. 21 [Spitz Tr. 77:8-18]. |

MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| D97. | Under the totality of the circumstances, the ultimate mechanism of decedent's death was lethal arrhythmia. | Ex. 9 [McCormick's Tr. 82:11-21]. | Undisputed. | |
| D98. | The use of the TASER was not directly causal to decedent's death. | Ex. 9 [McCormick's Tr. 84:24-85:6]. | Disputed, contradictory evidence presented. | Ex. 21 [Spitz Tr. 49:1-50:14, 50:15-50:20, 77:8-18, 104:12-105:2, 111:2-18]; Ex. 9 [McCormick Tr. 57:16-58:4, 58:6-59:3, 66:2-19, 67:6-20, 68:11-15, 68:16-69:2, 75:16-23, 79:12-24, 81:8-20, 81:21-83:6, 84:19-23, 85:24-86:6, 86:12-24, 90:14-91:2, 91:8-92:11, 92:25-93:24, 93:25-94:20, 137:24-138:6]. |
| D99. | Methamphetamine intoxication was a | Ex. 9 [McCormick's Tr. 86:4-6]. | Disputed, contradictory | Ex. 21 [Spitz Tr. 49:1-50:14, 50:15- |

MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | direct cause of death. | | evidence presented. | 50:20, 77:8-18, 104:12-105:2, 111:2-18]; Ex. 9 [McCormick Tr. 57:16-58:4, 58:6-59:3, 66:2-19, 67:6-20, 68:11-15, 68:16-69:2, 75:16-23, 79:12-24, 81:8-20, 81:21-83:6, 84:19-23, 85:24-86:6, 86:12-24, 90:14-91:2, 91:8-92:11, 92:25-93:24, 93:25-94:20, 137:24-138:6]. |
| D 100. | The two most important factors were methamphetamine intoxication and heart disease. | Ex. 9 [McCormick Tr. 95:4-7]; Ex. 12 [Chaikin Report at p. 3, 4]. | Disputed, contradictory evidence presented. | Ex. 21 [Spitz Tr. 49:1-50:14, 50:15-50:20, 77:8-18, 104:12-105:2, 111:2-18]; Ex. 9 [McCormick Tr. 57:16-58:4, 58:6-59:3, 66:2-19, 67:6-20, 68:11-15, 68:16-69:2, 75:16- |

MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | | | | 23, 79:12-24, 81:8-20, 81:21-83:6, 84:19-23, 85:24-86:6, 86:12-24, 90:14-91:2, 91:8-92:11, 92:25-93:24, 93:25-94:20, 137:24-138:6]. |
| D 101. | It is more likely decedent would be alive were it not for the methamphetamine intoxication. | Ex. 9 [McCormick Tr. 97:4-11]. | Disputed, contradictory evidence presented. | Ex. 21 [Spitz Tr. 88:8-89:10, 89:11-90:24]. |
| D 102. | There was a fatal amount of methamphetamine in decedent's system. | Ex. 9 [McCormick Tr. 103:5-11]. | Disputed, contradictory evidence presented. | Ex. 21 [Spitz Tr. 88:8-89:10, 89:11-90:24]. |
| D 103. | Decedent had at least three times more methamphetamine in his system than would be the minimum lethal amount of methamphetamine. | Ex. 9 [McCormick Tr. 104:2-7]. | Disputed, contradictory evidence presented. | Ex. 21 [Spitz Tr. 88:8-89:10, 89:11-90:24]. |

MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| D 104. | There was no vomit, water or other fluids, solids or objects that in any way obstructed decedent's ability to breath. | Ex. 9 [McCormick Tr. 107:9-13]. | Undisputed. | |
| D 105. | In the autopsy examination there were no exterior or interior signs or symptoms that he had asphyxiated. | Ex. 9 [McCormick Tr. 107:14-21]. | Disputed, contradictory evidence presented. | Ex. 21 [Spitz Tr. 107:24-110:3]. |
| D 106. | Asphyxia was not part of the cause of death. | Ex. 9 [McCormick Tr. 107:22-108:4]. | Disputed, contradictory evidence presented. | Ex. 21 [Spitz Tr. 98:21-99:9, 99:10-100:11, 102:21-103:16, 107:24-110:3, 111:2-111:18]. |
| D 107. | The hypertensive cardiovascular disease, which was preexisting, in and of itself could be a sufficient cause of decedent's death. | Ex. 9 [McCormick Tr. 109:5-8; 138:18-20]. | Disputed, contradictory evidence presented. | Ex. 21 [Spitz Tr. 49:1-50:14, 50:15-50:20, 77:8-18, 104:12-105:2, 111:2-18]; Ex. 9 [McCormick Tr. 57:16-58:4, 58:6-59:3, 66:2-19, |

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | | | | 67:6-20, 68:11-15, 68:16-69:2, 75:16-23, 79:12-24, 81:8-20, 81:21-83:6, 84:19-23, 85:24-86:6, 86:12-24, 90:14-91:2, 91:8-92:11, 92:25-93:24, 93:25-94:20, 137:24-138:6]. |
| D 108. | The amount of methamphetamine he had was also enough in and of itself to have caused a fatal overdose. | Ex. 9 [McCormick Tr. 138:22-24]. | Disputed, contradictory evidence presented. | Ex. 21 [Spitz Tr. 88:8-89:10, 89:11-90:24]. |
| D 109. | The pain from the TASER application or the multiple blunt impact injuries were not enough to be a sufficient cause of death. | Ex. 9 [McCormick Tr. 138:24-139:2]. | Disputed, contradictory evidence presented. | Ex. 21 [Spitz Tr. 49:1-50:14, 50:15-50:20, 77:8-18, 104:12-105:2, 111:2-18]; Ex. 9 [McCormick Tr. 57:16-58:4, 58:6-59:3, 66:2-19, 67:6-20, 68:11-15, 68:16-69:2, 75:16- |

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | | | | 23, 79:12-24, 81:8-20, 81:21-83:6, 84:19-23, 85:24-86:6, 86:12-24, 90:14-91:2, 91:8-92:11, 92:25-93:24, 93:25-94:20, 137:24-138:6]. |
| D 110. | The use of the TASER did not cause decedent's death. | Ex. 9 [McCormick Tr. 67:21-68:3]. | Disputed, contradictory evidence presented. | Ex. 21 [Spitz Tr. 49:1-50:14, 50:15-50:20, 77:8-18, 104:12-105:2, 111:2-18]; Ex. 9 [McCormick Tr. 57:16-58:4, 58:6-59:3, 66:2-19, 67:6-20, 68:11-15, 68:16-69:2, 75:16-23, 79:12-24, 81:8-20, 81:21-83:6, 84:19-23, 85:24-86:6, 86:12-24, 90:14-91:2, 91:8-92:11, 92:25-93:24, 93:25-94:20, 137:24-138:6]. |

MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| D 111. | Dr. Lwin examined decedent's brain. | Ex. 10 [Lwin Tr. 41:24-42:4.] | Undisputed. | |
| D 112. | Dr. Lwin conducted his gross examination of the decedent's brain first, and it revealed a normal brain with no signs of fatal cerebral trauma, including hemorrhages or other irregularities, even in the brain areas most susceptible to injury like the corpus callosum. | Ex. 10 [Lwin Tr. 44:3-23; 51:1-20]. | Disputed, contradictory evidence presented. | Ex. 21 [Spitz Tr. 107:24-110:3]. |
| D 113. | Dr. Lwin cut the decedent's brain and submitted several brain slice slides for microscopic examination to either confirm or dispel his findings in the gross examination. | Ex. 10 [Lwin Tr. 54:14-18]. | Undisputed. | |

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| D 114. | After reviewing decedent's brain externally, there was no fatal cerebral trauma and his brain looked normal. | Ex. 10 [Lwin Tr. 47:25-48:4; 51:1-3; 54:14-18; 59:14-60:19]. | Disputed, contradictory evidence presented. | Ex. 21 [Spitz Tr. 107:24-110:3]. |
| D 115. | Decedent did not die of blunt force trauma. | Ex. 10 [Lwin Tr. 51:13-14; 51:17-20; 52:23-53:6]. Ex. 15 [Autopsy Report at p. 1; COSB 000466]. | Disputed, contradictory evidence presented. | Ex. 21 [Spitz Tr. 49:1-50:14, 50:15-50:20, 77:8-18, 104:12-105:2, 111:2-18]; Ex. 9 [McCormick Tr. 57:16-58:4, 58:6-59:3, 66:2-19, 67:6-20, 68:11-15, 68:16-69:2, 75:16-23, 79:12-24, 81:8-20, 81:21-83:6, 84:19-23, 85:24-86:6, 86:12-24, 90:14-91:2, 91:8-92:11, 92:25-93:24, 93:25-94:20, 137:24-138:6]. |
| D 116. | The coroner also | Ex. 15 [Autopsy | Disputed, | Ex. 21 [Spitz Tr. |

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | found no evidence of any TASER or other electrical damage to any of decedent's internal organs; and he excluded TASER electricity as any cause of death. | Report at p. 1, 5-6; COSB 000466, 000470-000471]; Ex. 9 [McCormick Tr. 85:3-6]. | contradictory evidence presented. | 49:1-50:14, 50:15-50:20, 77:8-18, 104:12-105:2, 111:2-18]; Ex. 9 [McCormick Tr. 57:16-58:4, 58:6-59:3, 66:2-19, 67:6-20, 68:11-15, 68:16-69:2, 75:16-23, 79:12-24, 81:8-20, 81:21-83:6, 84:19-23, 85:24-86:6, 86:12-24, 90:14-91:2, 91:8-92:11, 92:25-93:24, 93:25-94:20, 137:24-138:6]. |
| D 117. | Although the medical examiner believed that pain could contribute to death, the coroner did not believe any pain-contribution was a primary/direct or major factor in | Ex. 15 [Autopsy Report at p. 1, COSB 000466]; Ex. 9 [McCormick Tr. 58:21-59:3; 81:21-82:10; 108:18-109:4]. | Undisputed. | |

MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | causing Schenck's death. | | | |
| D 118. | Dr. McCormick and Dr. Lwin are the only medical doctors known to have examined any part of Schenck's body post-mortem. | Ex. 15 [Autopsy Report/Neuropathology Report COSB 000466-000477]. | Disputed, contradictory evidence presented. | Ex. 7 [Paramedic Statement: Mestas, Ben, dated February 8, 2016]; Ex. 8 [Paramedic Statement: Cummings, Craig, dated February 8, 2016]; Ex. 21 [Spitz Tr. 56:5-20]. |
| P1. | Deputy Flores did not specially recall whether the woman yelled, "He's going to kill us," or what had transpired earlier at the 11th Avenue residence. | Ex. 3 [Flores Tr. 90:10-91:6]; Ex. 18 [Flores Tr. statement to Homicide Detail BATES No. 126:14-127:3, 150:12-23, 152:5-14]. | Disputed in part. Misrepresents the testimony of Dep. Flores.<br><br>Dep. Flores' recollections do not create a material issue of fact. | Ex. 3 [Flores Tr. 90:24-91:6]. |
| P2. | The man had very minor scratches and a cut on one of the man's finger and did not appear to be | Ex. 7 [Paramedic Statement: Mestas, Ben, dated January 25, 2016]; Ex. 8 [Paramedic Statement: | Disputed in part. Conflicting evidence presented. Misrepresents the statements of both | Ex. 7 [Paramedic Statement: Mestas, Ben, dated January 25, 2016]; Ex. 8 [Paramedic |

MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | beaten with a bat. | Cummings, Craig, dated January 25, 2016]. | paramedics. | Statement: Cummings, Craig, dated January 25, 2016]. |
| P3. | The man said he did not have any injuries. | Ex. 7 [Paramedic Statement: Mestas, Ben, dated February 8, 2016] | Disputed. Conflicting evidence presented. Misrepresents the statement of paramedic Mestas. | Ex. 7 [Paramedic Statement: Mestas, Ben, dated February 8, 2016]. |
| P4. | None of the presumed residents of the home reported any injuries. | Ex. 7 [Paramedic Statement: Mestas, Ben, dated February 8, 2016]; Ex. 8 [Paramedic Statement: Cummings, Craig, dated February 8, 2016]. | Disputed. Conflicting evidence presented. Misrepresents the statements of both paramedics. | Ex. 7 [Paramedic Statement: Mestas, Ben, dated February 8, 2016]; Ex. 8 [Paramedic Statement: Cummings, Craig, dated February 8, 2016]. |
| P5. | Deputy Flores did not observe the man with a bat. | Ex. 3 [Flores Tr. 97:21-98:15]. | Disputed in part. Misrepresents the testimony of Dep. Flores. Whether Dep. Flores observed the man with a bat is | Ex. 3 [Flores Tr. 97:21-98:15]. |

MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | | | irrelevant. | |
| P6. | Deputy Flores confirmed with dispatch that the report of the big rig on fire was false. | Ex. 1 [Radio Dispatch on January 25, 2016]. | Undisputed. | |
| P7. | Deputy Flores does not recall if he and Wilt discussed how they would search. | Ex. 3 [Flores Tr. 108:4-109:4]. | Undisputed. | |
| P8. | Deputies Flores and Wilt graduated from a P.O.S.T. certified police academy. | Ex. 3 [Flores Tr. 20:23-21:15]; Ex. 5 [Wilt Tr. 12:7-24]. | Undisputed. | |
| P9. | P.O.S.T. trains officers that any deprivation of air or ability to breathe creates the risk of asphyxiation. | Ex. 17 [Clark Tr. 57:6-23]. | Disputed. Conflicting evidence presented. Irrelevant and immaterial as Schenck did not die of asphyxiation. | Ex. 22 [Fonzi Tr. 75:8-77:1]. |
| P10. | P.O.S.T. trains that the longer a suspect in a chest-down, flat-prone position the | Ex. 17 [Clark Tr. 58:24-60:5]. | Disputed. Conflicting evidence presented. Irrelevant and | Ex. 22 [Fonzi Tr. 75:8-77:1]. |

MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | greater the risk the subject will suffer asphyxiation. | | immaterial as Schenck did not die of asphyxiation. | |
| P11. | P.O.S.T. trains officers to move a suspect to a recovery position as soon as the suspect is under control. | Ex. 17 [Clark Tr. 65:10-21]. | Undisputed. | |
| P12. | P.O.S.T. trains that officers cannot use the requirement of gaining control as a pretext to use excessive force. | Ex. 17 [Clark Tr. 66:7-16]. | Disputed. Conflicting evidence presented. Immaterial and unsupported by the admissible evidence that the deputies used the requirement of gaining control as a pretext for excessive force. | Ex. 22 [Fonzi Tr. 75:8-77:1]. |
| P13. | P.O.S.T. trains that punches, kicks, and empty hand strikes can be categorized as | Ex. 17 [Clark Tr. 74:13-23, 81:10-23]. | Disputed. Conflicting evidence presented. | Ex. 22 [Fonzi Tr. 63:2-64:5]. |

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | lethal levels of force and catastrophic dependent upon what part of a subject's body they are used on. | | | |
| P14. | P.O.S.T. trains officers that active resistance means pulling away, jerking away, or running away. | Ex. 17 [Clark Tr. 87:18-88:6]. | Undisputed. | |
| P15. | P.O.S.T. trains officers that pulling away and tensing up is non-combative. | Ex. 17 [Clark Tr. 87:18-88:6, 88:8-89:4, 100:22-102:5]. | Disputed. Conflicting evidence presented. Speculative. | Ex. 13 [Fonzi Report, p. 13]. |
| P16. | Deputy Flores utilized his hand-held flashlight and the light from his service weapon when he searched for Schenck. | Ex. 3 [Flores Tr. 99:3-24, 110:20-112:5]. | Disputed in part. Misrepresents the testimony of Dep. Flores. | Ex. 3 [Flores Tr. 99:3-24, 110:20-112:5]. |
| P17. | Deputies Wilt and Flores were positioned on | Ex. 6 [Audio of Radio Belt Recording from Spencer Wilt, dated | Disputed in part. Undisputed that deputies gave | Ex. 3 [Flores Tr. 178:21-179:10]; Ex. 5 [Wilt Tr. |

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | opposite sides of the bus shouting conflicting and confusing instructions at Schenck. | January 25, 2016]; Ex. 3 [Flores Tr. 110:20-112:5, 113:9-24,114:4-14]; Ex. 5 [Wilt Tr. 35:14-36:6, 36:8-13]; Ex. 18 [Flores Tr. of statement to Homicide Detail BATES No. 132:20-26]. | Schenck repeated verbal commands. Conflicting evidence presented. The objective audio recording speaks for itself. | 55:3-22]; Ex. 6 [Audio of Radio Belt Recording from Spencer Wilt, dated January 25, 2016]. |
| P18. | Defendant Wilt yelled, "You're gonna get shot if you don't show me your fucking hands" while Flores yelled, "Come out." | Ex. 6 [Audio of Radio Belt Recording from Deputy Spencer Wilt dated January 25, 2016]. | Undisputed. The objective audio recording speaks for itself.<br><br>The statements made by the deputies do not create a material issue of fact. | |
| P19. | Flores yelled, "Don't reach in your…" and was interrupted by Wilt suggesting, "Fucking pop him." | Ex. 6 [Audio of Radio Belt Recording from Deputy Spencer Wilt dated January 25, 2016]. | Undisputed. The objective audio recording speaks for itself.<br><br>The statements made by the | |

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | | | deputies do not create a material issue of fact. | |
| P20. | Flores yelled, "You reach in your pocket again and you're fucking dead." | Ex. 6 [Audio of Radio Belt Recording from Deputy Spencer Wilt dated January 25, 2016]. | Undisputed. The objective audio recording speaks for itself.<br><br>The statements made by Dep. Flores do not create a material issue of fact. | |
| P21. | Schenck passively resisted the conflicting and confusing commands by remaining still. | Ex. 3 [Flores Tr. 114:4-14]; Ex. 18 [Flores Tr. of statement to Homicide Detail BATES No. 000133:14-000134:4]. | Disputed. Unsupported by admissible evidence as to "passive resistance"; Conflicting evidence presented. | Ex. 3 [Flores Tr. 121:24-122:10; 123:5-124:2]. |
| P22. | While Schenck remained motionless, Flores yelled, "Come out here! Come out here now!" | Ex. 6 [Audio of Radio Belt Recording from Deputy Spencer Wilt dated January 25, 2016]. | Disputed in part. Unsupported by admissible evidence as to "motionless"; | Ex. 3 [Flores Tr. 121:24-122:10; 123:5-124:2]. |

MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | | | Conflicting evidence presented. The objective audio recording speaks for itself.<br><br>The statements made by Dep. Flores do not create a material issue of fact. | |
| P23. | Within 15 seconds of being discovered by the deputies, Schenck verbally responds to Flores by saying, "Okay." | Ex. 6 [Audio of Radio Belt Recording from Deputy Spencer Wilt dated January 25, 2016]. | Disputed. Conflicting evidence presented. Misrepresents the timeline. The objective audio recording speaks for itself. | Ex. 6 [Audio of Radio Belt Recording from Deputy Spencer Wilt dated January 25, 2016]. |
| P24. | Schenck responds to Flores again showing compliance by saying, "I'm coming out. I'm coming out." | Ex. 6 [Audio of Radio Belt Recording from Deputy Spencer Wilt dated January 25, 2016]. | Disputed. Unsupported by admissible evidence as to "showing compliance"; Conflicting | Ex. 3 [Flores Tr. 116:16-19; 117:12-14]. |

MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | | | evidence presented. The objective audio recording speaks for itself. | |
| P25. | Schenck tells officers, "Right here", and attempts to show deputies Wilt and Flores his hands while the deputies continue to yell contradictory orders. | Ex. 6 [Audio of Radio Belt Recording from Deputy Spencer Wilt dated January 25, 2016]. | Disputed in part. Conflicting evidence presented. The objective audio recording speaks for itself. Speculative. | Ex. 3 [Flores Tr. 116:16-19; 117:12-14]. |
| P26. | Wilt yells again, "Fucking pop him!" | Ex. 6 [Audio of Radio Belt Recording from Deputy Spencer Wilt dated January 25, 2016]. | Undisputed. The objective audio recording speaks for itself. Misrepresents the timeline.<br><br>The statement made by Dep. Wilt does not create a material issue of fact. | |

MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| P27. | Flores orders Schenck again, "Come out, or I'm gonna fucking Tase you! Let me see your hands!" | Ex. 6 [Audio of Radio Belt Recording from Deputy Spencer Wilt dated January 25, 2016]. | Undisputed. The objective audio recording speaks for itself.<br><br>The statements made by Dep. Flores do not create a material issue of fact. | |
| P28. | Schenck continues to slowly crawl out from underneath the bus. | Ex. 6 [Audio of Radio Belt Recording from Deputy Spencer Wilt dated January 25, 2016]. | Disputed. Unsupported by admissible evidence. Conflicting evidence presented. Speculative. | Ex. 3 [Flores Tr. 121:6-18]; Ex. 5 [Wilt Tr. 59:10-23]. |
| P29. | Flores tells Wilt, "He's out here" 45 seconds into the encounter. | Ex. 6 [Audio of Radio Belt Recording from Deputy Spencer Wilt dated January 25, 2016]. | Undisputed. | |
| P30. | Within 12 seconds of Flores telling Wilt Mr. Schenck was partially out from | Ex. 5 [Wilt Tr. 56:14 – 57:15]; Ex. 6 [Audio of Radio Belt Recording from Deputy Spencer | Undisputed. The objective audio recording speaks for itself. | |

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | underneath the bus, Wilt begins striking Schenk while saying, “Let me see your fucking hands!” | Wilt dated January 25, 2016]. | Misrepresents the timeline. | |
| P31. | Schenck begins to say “Ow, ow.” | Ex. 6 [Audio of Radio Belt Recording from Deputy Spencer Wilt dated January 25, 2016]. | Undisputed. The objective audio recording speaks for itself. Misrepresents the timeline. | |
| P32. | Initially, after being dragged from underneath the bus, Schenck appeared to be moving his legs in an attempt to stand up. | Ex. 5 [Wilt Tr. 58:24-59:17, 61:7-62:2, 63:20-64:12, 64:13-65:16]; Ex. 18 [Flores Tr. of statement to Homicide Detail BATES No. 000137:10-000138:3]. | Undisputed. | |
| P33. | Defendant Wilt began to repeatedly deliver hammer strikes to the face and back of Mr. Schenk head. | Ex. 5 [Wilt Tr. at 56:14-57:15, 57:17-19]; Ex. 19 [Wilt Tr. of statement to Homicide Detail BATES No. 000202:11-000203:5]. | Disputed in part. Conflicting evidence presented. Misrepresents the testimony of Dep. Wilt. | Ex. 5 [Wilt Tr. 56:23-58:7]. |
| P34. | Schenck was not | Ex. 5 [Wilt Tr. 63:20- | Disputed in part. | Ex. 5 [Wilt Tr. |



MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | attempting to attack the defendant deputies and began to try to protect his face and head from Wilts hammer strikes to his head. | 64:12, 64:13-65:16]; Ex. 19 [Wilt Tr. of statement to Homicide Detail BATES No. 199:10-19, 203:7-27]; Ex. 18 [Flores Tr. of statement to Homicide Detail BATES No. 000150:12-000151:12]. | Conflicting evidence presented. Speculation as to Schenck not attempting to attack the defendant deputies. | 57:21-58:10; 63:10-24]. |
| P35. | Defendant Wilt continued to deliver hammer strikes about Mr. Schenck's face/head and could tell the continuous punches were taking a toll on Mr. Schenck. | Ex. 5 [Wilt Tr. 63:20-64:12, 64:13-65:16]; Ex. 19 [Wilt Tr. of statement to Homicide Detail BATES No. 000203:7-000204:21]. | Disputed in part. Conflicting evidence presented. Misrepresents the evidence in which Dep. Wilt was confronted with active resistance. | Ex. 5 [Wilt Tr. 63:10-24]. |
| P36. | Schenck cried out in pain after Flores placed the TASER device in his lower back pleading, "Wooo! I'll show them to you! Ooo!" | Ex. 6 [Audio of Radio Belt Recording from Deputy Spencer Wilt dated January 25, 2016]. | Disputed in part. Conflicting evidence presented. Misrepresents the timeline. The objective audio recording speaks for itself. | Ex. 3 [Flores Tr. 134:19-135:13]. |

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | | | | |
| P37. | Schenck never really tucked his hands underneath his body, but did pull away from the deputies grip several times. | Ex. 5 [Wilt Tr. 61:7-62:2, 63:20-64:12]; Ex. 17 [Clark Tr. 88:8-89:4]. | Disputed. Unsupported by admissible evidence; Conflicting evidence presented. Speculative. | Ex. 3 [Flores Tr. 112:1-18;116:16-117:21]; Ex. 5 [Wilt Tr. 60:1-18; 62:4-18]. |
| P38. | Wilt continuously hammered Schenck about his head and face while Schenck lied stomach down flat on the ground most of the time. | Ex. 5 [Wilt Tr. 50:11-51:7, 52:14-53:3]; Ex. 19 [Wilt Tr. of statement to Homicide Detail BATES No. 000207:6-27] | Disputed in part. Conflicting evidence presented. Misrepresents the evidence in which Dep. Wilt was confronted with active resistance. | Ex. 5 [Wilt Tr. 53:16-22; 56:23-58:10; 60:1-18]. |
| P39. | Schenck lay flat, stomach on the ground while he began to tell the deputies he couldn't breathe multiple times. | Ex. 5 [Wilt Tr. 50:11-51:7, 52:14-53:3]; Ex. 6 [Audio of Radio Belt Recording from Deputy Spencer Wilt dated January 25, 2016]; Ex. 19 [Wilt Tr. of statement to Homicide Detail BATES No. 000207:6- | Disputed in part. Conflicting evidence presented. Misrepresents the evidence as to multiple times. The objective audio recording speaks for itself. | Ex. 3 [Flores Tr. 163:8-21]; Ex. 5 [Wilt Tr. 71:10-19]; Ex. 18 [Flores Tr. of statement to Homicide Detail BATES No. 000146:7-17]. |

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | | 27]; Ex. 18 [Flores Tr. of statement to Homicide Detail BATES No. 000146:7-17]; Ex. 4 [Watson Tr. 21:1-12]. | | |
| P40. | Schenck is held in prone position while Wilt rests one of his knees across Schenck's shoulders when Watson arrives. | Ex. 4 [Watson Tr. 21:1-12]; Ex. 6 [Audio of Radio Belt Recording from Deputy Spencer dated January 25, 2016]. | Undisputed. | |
| P41. | Schenck continues to tell the defendant deputies he cannot breathe for approximately 1 minute. | Ex. 6 [Audio of Radio Belt Recording from Deputy Spencer dated January 25, 2016]. | Disputed. Conflicting evidence presented. Speculative as to approximately 1 minute. | Ex. 3 [Flores Tr. 163:8-21]; Ex. 5 [Wilt Tr. 71:10-19]; Ex. 6 [Audio of Radio Belt Recording from Deputy Spencer Wilt dated January 25, 2016]. |
| P42. | Defendant Wilt recalled his training about the dangerousness of | Ex. 19 [Wilt Tr. of statement to Homicide Detail BATES No. COSB 000178:1-18]. | Disputed. Conflicting evidence presented. Misrepresents the | Ex. 19 [Wilt Tr. of statement to Homicide Detail BATES No. COSB |

Manning & Kass Ellrod, Ramirez, Trester LLP Attorneys at Law

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | him being on top of Mr. Schenck while Mr. Schenck lay in a prone position. | | statement of Dep. Wilt. | 000178:1-18]. |
| P43. | Defendant Flores recalled his training about the dangerousness of him being on top of Mr. Schenck while he lay in a prone position. | Ex. 18 [Flores Tr. of statement to Homicide Detail BATES No. COSB 000146:1-24]. | Disputed. Conflicting evidence presented. Misrepresents the statement of Dep. Flores. | Ex. 18 [Flores Tr. of statement to Homicide Detail BATES No. COSB 000146:1-24]. |
| P44. | Defendant Deputy Wilt told Mr. Schenck to role over within 2 minutes and 39 seconds of the Defendant deputies making their initial visual contact of Schenck. | Ex. 6 [Audio of Radio Belt Recording from Deputy Spencer Wilt dated January 25, 2016]. | Disputed in part. Misrepresents the timeline. The objective audio recording speaks for itself. Speculative as to when deputies made their initial visual contact of Schenck. | Ex. 6 [Audio of Radio Belt Recording from Deputy Spencer Wilt dated January 25, 2016]. |
| P45. | Defendant Deputy Spencer Wilt orders Mr. Schenck, "Roll | Ex. 6 [Audio of Radio Belt Recording from Deputy Spencer Wilt | Undisputed. The objective audio recording | |

MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | onto your fucking butt now" 2 minutes and 42 seconds after the defendant deputies make initial visual contact with Mr. Schenck. | dated January 25, 2016]. | speaks for itself. Misrepresents the timeline. Speculative as to when deputies made their initial visual contact of Schenck. | |
| P46. | Defendant Deputy Wilt orders Mr. Schenck, "Stand the fuck up now" 2 minutes and 47 seconds after the deputies make initial visual contact with Mr. Schenck. | Ex. 6 [Audio of Radio Belt Recording from Deputy Spencer Wilt dated January 25, 2016]. | Undisputed. The objective audio recording speaks for itself. Misrepresents the timeline. Speculative as to when deputies made their initial visual contact of Schenck. | |
| P47. | Mr. Schenck moans and tells deputies that he doesn't think he is going to make it 3 mins and 20 seconds after the Defendant officers | Ex. 6 [Audio of Radio Belt Recording from Deputy Spencer Wilt dated January 25, 2016]; Ex. 19 [Wilt Tr. of statement to Homicide Detail | Disputed. Conflicting evidence presented. The objective audio recording speaks for itself. Misrepresents the | Ex. 6 [Audio of Radio Belt Recording from Deputy Spencer Wilt dated January 25, 2016]. |

MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | make their initial visual contact with him underneath the bus. | BATES No. 000178:20-27]. | evidence. Speculative as to when deputies made their initial visual contact of Schenck and that Schenck said he doesn't think he is going to make it. | |
| P48. | Mr. Schenck seems dazed when the defendants stand him up to his feet. | Ex. 19 [Wilt Tr. of statement to Homicide Detail BATES No. 000178:20-27]. | Undisputed. | |
| P49. | Mr. Schenck collapsed three times during the time Defendant officers walked him to their patrol car. | Ex. 6 [Audio of Radio Belt Recording from Deputy Spencer Wilt dated January 25, 2016]; Ex. 19 [Wilt Tr. of statement to Homicide Detail BATES No. 000178:20-27; 000179:2-16]; Ex. 4 [Watson Tr. 25:8-14, 25:22-26:3, 26:17-27:14, 28:4-6]; Ex. 18 | Disputed in part. Unsupported by the admissible evidence; Conflicting evidence presented. Speculative as to "collapsed". | Ex. 3 [Flores Tr. 168:5-16; 169:18-21; 170:3-11]; Ex. 5 [Wilt Tr. 79:9-80:2; 80:9-16; 83:20-84:17]; Ex. 4 [Watson Tr. 32:4-14]. |

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | | [Flores Tr. of statement to Homicide Detail BATES No. 000160:15-000161:25, 000162:6-27]. | | |
| P50. | Defendant Watson shoves Mr. Schenck into the side of the bus with one of Defendant Watson's palms on the back of Mr. Schenck's head and one palm on Mr. Schenck's shoulders. | Ex. 4 [Watson Tr. 25:8-14, 25:22-26:3, 26:17-27:14, 28:4-6]. | Disputed in part. Conflicting evidence presented. Misrepresents the evidence in which Dep. Watson was confronted with active resistance.. | Ex. 4 [Watson Tr. 25:8-21]. |
| P51. | Defendant Watson also shoves Mr. Schenck into a post in the ground. | Ex. 4 [Watson Tr. 25:8-14, 25:22-26:3, 26:17-27:14, 28:4-6]. | Disputed in part. Conflicting evidence presented. Misrepresents the evidence in which Dep. Watson was confronted with active resistance. | Ex. 4 [Watson Tr. 28:4-15]. |
| P52. | Within 3 minutes and 28 seconds of finding Mr. Schenck underneath the bus, | Ex. 6 [Audio of Radio Belt Recording from Deputy Spencer Wilt dated January 25, | Undisputed. Misrepresents the timeline. The objective audio | |

MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | Defendant deputies order Mr. Schenck to "Walk, mother fucker! Stand up!" | 2016]. | recording speaks for itself.<br><br>The statements made by the deputies do not create a material issue of fact. | |
| P53. | Within 4 minutes and 12 seconds of finding Mr. Schenck underneath the bus, defendant deputies order Mr. Schenck, "Keep walking! Get up! Walk! Get up! Get up bitch!" | Ex. 6 [Audio of Radio Belt Recording from Deputy Spencer Wilt dated January 25, 2016]. | Undisputed. Misrepresents the timeline. The objective audio recording speaks for itself.<br><br>The statements made by the deputies do not create a material issue of fact. | |
| P54. | Within 4 minutes and 30 seconds of finding Mr. Schenck underneath the bus, defendant deputies order Mr. Schenck, | Ex. 6 [Audio of Radio Belt Recording from Deputy Spencer Wilt dated January 25, 2016]. | Undisputed. Misrepresents the timeline. The objective audio recording speaks for itself. | |

MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | "Stand up now! Get on your fucking feet now!" | | The statements made by the deputies do not create a material issue of fact. | |
| P55. | Within 4 minutes and 46 seconds of finding Mr. Schenck underneath the bus, defendant deputies order Mr. Schenck, "Keep fucking walking! What's wrong with you?!?" | Ex. 6 [Audio of Radio Belt Recording from Deputy Spencer Wilt dated January 25, 2016]. | Undisputed. Misrepresents the timeline. The objective audio recording speaks for itself.<br><br>The statements made by the deputies do not create a material issue of fact. | |
| P56. | The dog was making a territorial bark initially, but it did not come at the defendant officers. | Ex. 18 [Flores Tr. of statement to Homicide Detail BATES No. 000161:12-25]. | Undisputed. | |
| P57. | The cause of death and other significant | Ex. 16 [Spitz Tr. 49:1-50:14, 50:15-50:20, | Disputed in part. Unsupported by | |

MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | conditions are both part of the cause of death. Those findings are separated on the death certificate and called part 1 and part 2. Here the impact injuries and taser applications cannot be ignored in determining the cause of death. | 77:8-18, 104:12-105:2, 111:2-18]; Ex. 9 [McCormick Tr. 57:16-58:4, 58:6-59:3, 66:2-19, 67:6-20, 68:11-15, 68:16-69:2, 75:16-23, 79:12-24, 81:8-20, 81:21-83:6, 84:19-23, 85:24-86:6, 86:12-24, 90:14-91:2, 91:8-92:11, 92:25-93:24, 93:25-94:20, 137:24-138:6]. | admissible evidence as to "here the impact injuries and taser applications cannot be ignored in determining the cause of death." see Defendants' *Daubert* Motion filed concurrently herewith. | |
| P58. | McCormick identified 23 blunt impact injuries to the exterior extremities; all of these injuries contributed to the cause of death in total. | Ex. 9 [McCormick Tr. 57:16-58:4, 58:6-59:3, 66:2-19, 67:6-20, 68:11-15, 68:16-69:2, 75:16-23, 79:12-24, 81:8-20, 81:21-83:6, 84:19-23, 85:24-86:6, 86:12-24, 90:14-91:2, 91:8-92:11, 92:25-93:24, 93:25-94:20, 137:24-138:6]. | Disputed in part. Conflicting evidence presented. Misrepresents Dr. McCormick's testimony. | Ex. 9 [McCormick Tr. 75:1-23; 78:22-79:2]; Ex. 15 [Autopsy Report at p. 1; COSB 000466]. |
| P59. | McCormick opined there can be more | Ex. 9 [McCormick Tr. 57:16-58:4, 58:6-59:3, | Undisputed. | |

MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | than one direct cause in terms of physical impact on the body in terms of Part 2. The two parts are not separate in this case; the way the death certificate is constructed, it compels information to be placed in the different parts. | 66:2-19, 67:6-20, 68:11-15, 68:16-69:2, 75:16-23, 79:12-24, 81:8-20, 81:21-83:6, 84:19-23, 85:24-86:6, 86:12-24, 90:14-91:2, 91:8-92:11, 92:25-93:24, 93:25-94:20, 137:24-138:6]. | | |
| P60. | The pain associated with the blunt impacts was a contributing factor in Schenck's death. The pain involved here is relevant. | Ex. 9 [McCormick Tr. 57:16-58:4, 58:6-59:3, 66:2-19, 67:6-20, 68:11-15, 68:16-69:2, 75:16-23, 79:12-24, 81:8-20, 81:21-83:6, 84:19-23, 85:24-86:6, 86:12-24, 90:14-91:2, 91:8-92:11, 92:25-93:24, 93:25-94:20, 137:24-138:6]. | Disputed in part. Conflicting evidence presented. Misrepresents Dr. McCormick's testimony and documentary evidence. | Ex. 9 [McCormick Tr. 75:1-23; 79:3-24; 81:21-82:21]; Ex. 15 [Autopsy Report at p. 1; COSB 000466]. |
| P61. | Schenck died as a result of combination of conditions | Ex. 16 [Spitz Tr. 49:1-50:14, 50:15-50:20, 77:8-18, 104:12-105:2, | Disputed. Unsupported by admissible | |

MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | primarily including extensive injuries to the head and multiple EMD applications beyond need. | 111:2-18]; Ex. 21 [Clark Tr. 35:14-36:13]. | evidence, see Defendants' *Daubert* Motion filed concurrently herewith. | |
| P62. | Blunt trauma was a significant contributing factor in causing the unnecessary death of Schenck. | Ex. 16 [Spitz Tr. 49:1-50:14, 50:15-50:20, 77:8-18, 104:12-105:2, 111:2-18]. | Disputed. Unsupported by admissible evidence, see Defendants' *Daubert* Motion filed concurrently herewith. | |
| P63. | The brutal handling by the officers who punched Schenck in the face, used EMDs to strike Schenck at least 10 times in rapid succession, and used the same method of striking him on his torso and extremities while holding him down in | Ex. 16 [Spitz Tr. 49:1-50:14, 50:15-50:20, 51:4-52:5; 77:8-18, 104:12-105:2, 111:2-18]. | Disputed. Unsupported by admissible evidence, see Defendants' *Daubert* Motion filed concurrently herewith. | |

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | prone position which caused him more pain, aggravation, and air hunger and that the latter caused conscious pain and suffering and fear of death. | | | |
| P64. | Mr. Schenck was killed by "predictably killed by severely applying force, beating him a large number of times both on the top of the head and the face while being and also restrained in a prone position with pressure on the back, all conditions that interfered with his ability to breathe. | Ex. 16 [Spitz Tr. 49:1-50:14, 50:15-50:20, 51:4-52:5; 53:4-54:14; 77:8-18, 104:12-105:2, 111:2-18]. | Disputed. Unsupported by admissible evidence, see Defendants' *Daubert* Motion filed concurrently herewith. | |
| P65. | There is reason to take exception to some of | Ex. 16 [Spitz Tr. 49:1-50:14, 50:15-50:20, 51:4-52:5; 53:4-54:14; | Disputed. Unsupported by admissible | |

MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | McCormick's testimony that Schenck suffered no broken bones except those consistent with CPR because the CAT scan showed broken face bones. | 77:8-18, 104:12-105:2, 111:2-18]. | evidence, see Defendants' *Daubert* Motion filed concurrently herewith. | |
| P66. | There is evidence of flattening of Mr. Schenck's brain in autopsy photos. | Ex. 16 [Spitz Tr. 107:24-110:3]. | Disputed. Unsupported by admissible evidence, see Defendants' *Daubert* Motion filed concurrently herewith. | |
| P67. | Science does not support the contention that a person who ingests enough methamphetamine to result in a toxicology measurement approaching 2 milligrams per liter | Ex. 16 [Spitz Tr. 88:8-89:10, 89:11-90:24]. | Disputed. Unsupported by admissible evidence, see Defendants' *Daubert* Motion filed concurrently herewith. | |

MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

| | Undisputed Fact | Supporting Evidence | Response | Supporting Evidence |
|---|---|---|---|---|
| | as fatal. | | | |

DATED: August 29, 2018

**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**

By: /s/ Tony M. Sain
Tony Sain
Lynn Carpenter
Attorneys for Defendants, COUNTY OF SAN BERNARDINO, JONATHAN FLORES, SPENCER WILT, and KENT WATSON

MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

73
Case No. 5:16-cv-02638-FMO-KK
JOINT APPENDIX OF UNDISPUTED AND DISPUTED FACTS